**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

KENNON DUNN,

     Plaintiff,

v.

CITY OF FORT VALLEY,
LT LONNIE POSTELL,
in his individual capacity,
LT WILLIE MARSHALL JR,
in his individual capacity,
DONOVAN SCOTT-SINCLAIR,
in his individual capacity,
CAPTAIN JEFFERY LUNDY,
in his individual capacity,
CHIEF LAWRENCE SPURGEON,
in his individual capacity,
MAYOR BARBARA WILLIAMS,
in her individual capacity,
KARIN VINSON,
in her individual capacity,

     Defendants.

Case No.:

## VERIFIED COMPLAINT

Plaintiff brings this action against Defendants under 42 U.S.C. § 1983,

42 U.S.C. § 2000aa, the First, Fourth, and Fourteenth Amendments of the

1

United States Constitution, and Georgia law based on a seizure and criminal charges premised upon his simply filming in public places.

PARTIES

1.  Plaintiff Kennon Dunn is a United States Citizen, resident of Georgia, and competent to bring this lawsuit.

2.  Defendant Fort Valley Police Lieutenant Lonnie Postell ("Lt. Postell") is sued in his individual capacity. At all times relevant to the complaint, Postell acted under the color of law.

3.  Defendant Fort Valley Police Lieutenant Willie Marshall, Jr. ("Lt. Marshall") is sued in his individual capacity. At all times relevant to the complaint, Marshall acted under the color of law.

4.  Defendant Fort Valley Police Officer Donovan Scott-Sinclair ("Officer Scott-Sinclair") is sued in his individual capacity. At all times relevant to the complaint, Scott-Sinclair acted under the color of law.

5.  Defendant Fort Valley Police Captain Jeffery Lundy ("Capt. Lundy") is sued in his individual capacity. At all times relevant to the complaint, Lundy acted under the color of law.

6.    Defendant Fort Valley Police Chief Lawrence Spurgeon ("Chief
      Spurgeon") is sued in his individual capacity. At all times relevant to
      the complaint, Spurgeon acted under the color of law.

7.    Defendant Fort Valley Mayor Barbara Williams ("Mayor Williams")
      is sued in her individual capacity. At all times relevant to the
      complaint, Williams acted under the color of law.

8.    Defendant former Fort Valley City Administrator Karin Vinson ("Ms.
      Vinson") is sued in her individual capacity. At all times relevant to the
      complaint, Vinson acted under the color of law.

9.    Defendant City of Fort Valley ("Fort Valley") is a Georgia
      municipality subject to suit.

## JURISDICTION AND VENUE

10.   This action arises under the authority vested in this Court by virtue of
      42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343 (a)(3), the
      First, Fourth, and Fourteenth Amendments of the United States
      Constitution, and Georgia law.

11.   This Court has supplemental jurisdiction of Plaintiff's state law claims
      under 28 U.S.C. § 1367.

12. This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201-02, 42 U.S.C. § 1983, and Georgia law.

13. Venue in this Court is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims arose in this district and division and because Fort Valley is located within this district and division.

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS

*Mr. Dunn's Arrest*

14. Mr. Dunn is a United States veteran and independent journalist who is passionate about continuing to uphold his vow to the Constitution, encouraging other government officers to do the same, and educating the public on civic engagement and constitutional rights.

15. To support this goal, Mr. Dunn films and produces independent news broadcasts focusing on issues of government accountability throughout Georgia. He posts these videos online for free public viewing. Over 8,000 viewers currently subscribe to his YouTube channel.

16. On July 9, 2018, Mr. Dunn arrived in Fort Valley to videotape and photograph the historic downtown area and to film his first Public Service Announcement regarding missing persons in Fort Valley.

17. Mr. Dunn began his report by taking footage of the gazebo and other monuments on downtown Main Street. He then proceeded to the Fort Valley Police Department.

18. Mr. Dunn took photos and video inside the historic Police Department building and around the grounds. The purpose of this footage was primarily to serve as "B-roll" for his report, but also to evaluate the building's accessibility for disabled people, as Mr. Dunn is, himself, disabled. Several officers noticed Mr. Dunn filming there but did not speak to him.

19. Mr. Dunn then proceeded next door to Fort Valley City Hall. He again took photographs and video of the inside of the building, including the Missing Persons posters on the public service announcement board. Mr. Dunn, impressed to see a city official hard at work, shot additional footage from a distance of the mayor inside of her office.

20.   While he was filming, Mr. Dunn was approached by City Hall employee Karin Vinson. Ms. Vinson demanded to know why Mr. Dunn was recording. Mr. Dunn politely declined to inform her of his personal and professional reasons.

21.   At all times, Mr. Dunn was only present in the publicly accessible areas of City Hall.

22.   Mr. Dunn carried a video camera and a digital camera and had an additional body camera at his chest, clearly identifiable as such.

23.   Mr. Dunn did not carry a bag. He was not wearing loose clothing.

24.   Mr. Dunn was never asked to leave City Hall. Regardless, Ms. Vinson and Mayor Williams called the police to report Mr. Dunn as a "suspicious person."

25.   Shortly thereafter, Mr. Dunn was approached by Lt. Lonnie Postell as he was continuing his filming in the City Hall lobby. Lt. Postell aggressively questioned Mr. Dunn about his "agenda" and immediately ordered him to step outside.

26.   Mr. Dunn calmly attempted to confirm that he was in a public area and ascertain why he was being forcibly removed. Lt. Postell

acknowledged that the City Hall lobby was a publicly accessible area, but stated that the public was not allowed to take photographs there.

27.    There was no signage or other indication of a policy prohibiting the public from taking photographs, and in fact there is no policy regarding photographing in public areas of government buildings in Fort Valley, Georgia

28.    Lt. Postell then pulled Mr. Dunn's left arm behind his back and began pushing him towards the door. Mr. Dunn, recovering from back surgery and unable to walk without the use of his cane, requested Lt. Postell allow him to walk outside freely and did so without incident.

29.    Mr. Dunn was met outside by two additional Fort Valley officers, Officer Donavon Scott-Sinclair and Sgt. Derrick Dunson.

30.    Lt. Postell demanded that Mr. Dunn show identification. Mr. Dunn explained that he did not have identification on him, having left it inside of his car.

31.    Mr. Dunn asked the officers if he had done anything wrong. Lt. Postell again informed Mr. Dunn that he was not allowed to take pictures in City Hall without permission of some undefined person.

32.    Lt. Postell repeatedly asked Mr. Dunn for his name and identification. Mr. Dunn offered to provide his name if Lt. Postell would inform him of the crime for which he was being detained.

33.    Lt. Postell falsely informed Mr. Dunn that it was a violation of Georgia law to not carry identification at all times.

34.    Georgia law does not require an individual to have identification on their person when they are not operating a vehicle.

35.    Lt. Postell consulted with Ms. Vinson while Mr. Dunn was detained outside.  Ms. Vinson informed Lt. Postell that Mr. Dunn was not allowed to take pictures of the mayor without permission.

36.    Ms. Vinson also informed Lt. Postell that it was proper to arrest Mr. Dunn because he did not produce identification.

37.    Lt. Postell handcuffed and searched Mr. Dunn without consent and confiscated his video camera.

38.    Mr. Dunn was then forced to endure a painful walk to the Police Department. Due to the handcuffs, he had to use his cane in an abnormal position. Lt. Postell did not allow Mr. Dunn to take a break

and Officer Scott-Sinclair informed Mr. Dunn that he did not care that he was in pain.

39. Officer Scott-Sinclair also told Mr. Dunn that it was clear that Mr. Dunn had "bad intentions," without explaining the basis for that claim.

40. Once inside the police station, Mr. Dunn requested to speak to a supervisor. Mr. Dunn was then taken to a booking room.

41. Mr. Dunn requested an attorney, but Lt. Postell continued to interrogate him and threatened to detain him indefinitely unless he provided his name.

42. Lt. Postell again informed Mr. Dunn that his supposed "crime" of taking photographs in City Hall was the reason he demanded identification from Mr. Dunn.

43. Officer Scott-Sinclair then reached over Mr. Dunn's shoulder and turned off Mr. Dunn's body camera without permission.

44. Captain Jeffery Lundy and Lt. Willie Marshall, Jr. then entered the booking room. Mr. Dunn explained that he was engaging in activity protected by the First Amendment and repeatedly asked the

supervisors to contact their local District Attorney to confirm that his actions were lawful.

45.    The supervisors informed Mr. Dunn that he could dispute the charges later and maintained that Mr. Dunn was being charged with Obstruction.

46.    Cpt. Lundy also falsely informed Mr. Dunn that he could be arrested for Obstruction for simply failing to identify himself to an officer.

47.    Cpt. Lundy further stated that Mr. Dunn had to be charged with a crime at this point because he had already been arrested and brought to the booking room.

48.    Mr. Dunn continued to film some of this interaction in the booking room and broadcast live on social media without incident or any request that he stop filming.

49.    Upon learning that Mr. Dunn was broadcasting, Lt. Marshall placed him in a holding cell and contacted Chief Spurgeon to explain the situation.

50. Chief Spurgeon then conferred with the Local District Attorney and instructed Lt. Marshall to charge Mr. Dunn with Disorderly Conduct, a violation of Fort Valley City Ordinance 62-11.

51. At no point prior to this directive did any of the five officers involved mention a charge of Disorderly Conduct or anything that could be construed as Disorderly Conduct.

52. Fort Valley City Ordinance 62-11 states, "It shall be unlawful for any person to fight, be guilty of any riotous or disorderly conduct, or disturb the peace and quiet of any person in any other manner within the corporate limits of the city."

53. Mr. Dunn never raised his voice, uttered fighting words, or acted in a violent or tumultuous manner. Mr. Dunn remained calm and professional throughout his encounters with all Fort Valley officials.

54. Mr. Dunn was issued a citation for Disorderly Conduct.

55. As a result of his arrest, Mr. Dunn suffered a loss of his liberty, humiliation, and physical and emotional distress.

*Criminal Trespass Notifications*

56. Lt. Marshall also issued two criminal trespass notifications preventing Mr. Dunn from entering City Hall or the Fort Valley Police Department indefinitely.

57. Lt. Marshall informed Mr. Dunn that he would need to call for a police escort if he wished to conduct business in these buildings and that he would not be allowed inside for any other reason, including filming or attending public meetings.

58. Recognizing that Mr. Dunn would need to enter City Hall to access the Municipal Court for proceedings regarding his citation, Lt. Marshall told Mr. Dunn that he would be allowed into the court for this case only and only in the company of his attorney.

59. Lt. Marshall stated that the bans were in effect "until the City or City Council decides to lift them."

60. Mayor Williams later informed Mr. Dunn via telephone that she did not have the authority to lift the bans and that it was the responsibility of the police department to do so.

61. Mr. Dunn was not given any information on how to challenge the bans, and they are still currently in place.

62. The documents purporting to bar Mr. Dunn from the Fort Valley City Hall and Police Department are attached hereto as Exhibit A (City Hall) and Exhibit B (Police Department).

63. The documents purporting to bar Mr. Dunn from the Fort Valley City Hall and Police Department were issued by the City of Fort Valley.

64. The documents represent the official policy of the City of Fort Valley.

65. The policy allows for the banning of persons from public areas without adequate standards for enforcement and without time limits or an appeal process.

66. The documents were issued to Mr. Dunn because he was filming and photographing government activity in public areas of public buildings.

67. Lt. Marshall had the final and unreviewable authority to issue the ban.

68. Chief Spurgeon ratified both the decision to impose the ban and the basis for the ban by letter indicating that the notifications were "proactive measure[s]" that were "both necessary and prudent."

69. The documents that purport to bar Mr. Dunn from Fort Valley property are indefinite in their operative duration.

70.     There is no exception in the documents that would allow Mr. Dunn to attend meetings of the Fort Valley City Council, film activity in City Hall or the Police Department, or access the Fort Valley Municipal Court.

71.     The documents do not specify the method for challenging the bans or the procedure for accessing government property to conduct legitimate business while the bans are in place.

72.     Mr. Dunn wishes to further broadcast reports of activities in Fort Valley City Hall and Police Department, including any newly posted Missing Persons announcements.

73.     Mr. Dunn has not attempted to enter Fort Valley City Hall or Police Department without a police escort since July 9, 2018 because he reasonably believes and fears he will be arrested and prosecuted for doing so.

*Mr. Dunn's Charge is Dismissed*

74.     Mr. Dunn was released from jail as presenting ID in lieu of bail.

75.     On November 13, 2018, the Peach County District Attorney dismissed the charge against Mr. Dunn.

76.   Two days later, Mr. Dunn attempted to submit a letter confirming dismissal of his charges to the Fort Valley Police Department in an effort to remove the criminal trespass notifications against him.

77.   Mr. Dunn called from outside of the building to have an officer escort him inside to conduct his business. Lt. Marshall was aware that Mr. Dunn had requested an escort but refused to allow him on the property and instructed other officers not to allow him to come inside.

78.   Mr. Dunn was eventually able to submit his dismissal letter and a complaint regarding the criminal trespass notifications.

79.   On December 14, 2018, Chief Spurgeon sent a letter responding to the complaint and ratifying the issuance of the criminal trespass notifications by indicating that the notifications were "proactive measure[s]" that were "both necessary and prudent."

80.   Chief Spurgeon did not explain his reason for refusing to lift the ban. He did not give Mr. Dunn any information as to how he might appeal the decision.

81.    The Chief also threatened to continue to prosecute the Disorderly

Conduct charge in City Court, despite the county District Attorney's

dismissal.

82.    The criminal trespass notifications against Mr. Dunn are still in effect

as of the date of this complaint, preventing him from accessing Fort

Valley City Hall or Police Department property.

83.    Mr. Dunn is disabled and walks with the assistance of a cane. On

multiple occasions since he was banned from Fort Valley property, he

has been forced to stand outside for long periods of time waiting for a

police escort in order to conduct business in Fort Valley Police

Department and City Hall.

*Fort Valley Fails to Respond to Open Records Requests*

84.    Throughout this ordeal, Mr. Dunn made repeated requests to Fort

Valley Police Department for information pertaining to his case

pursuant to the Georgia Open Records Act, O.C.G.A. § 50-18-70 *et*

*seq*.

85. As of the date of this complaint, Mr. Dunn has received no response other than acknowledgement of receipt to the following requests submitted via electronic mail:

    a.    Requested December 10, 2018: All of Fort Valley Police Department Holding Cell records for July 09, 2018.

    b.    Requested December 20, 2018: All email records, electronic records, and messages that pertain to Mr. Dunn, Kennon Dunn, Keenon Dunn, Ken Dunn, Dunn, Central Civilian Auditor, Central Civilian Auditors between the months of July and Current date of this request for the Fort Valley Police Department.

    c.    Requested December 22, 2018: All of the CCTV Camera footage and audio of Fort Valley Police Department on Nov 15th between 11:00am - 1:00pm (1100hrs - 1300hrs); to include but not limited to: cameras of interior lobby, exterior building camera, hallway cameras, breakroom cameras, customer service room cameras, booking room, and any other cameras attached

or affixed to Fort Valley Police Department property 200 W Church St, Fort Valley, GA 31030.

d.   Requested June 27, 2019: All public records, if any, that reflect limitations on, or requirements for, filming in public buildings in Fort Valley, Georgia that were in existence during July 2018 and all memos and announcements related to public photography and/or Mr. Dunn from July 2018 to date of request.

86.   The following information was consolidated into a single request and re-submitted to Fort Valley employee Karen Richardson on January 25, 2019. All of these items were previously requested at least once and never received. Mr. Dunn has yet to receive the requested documents.

i.   All Policies regarding booking room cameras and audio records policies, retention, and logging policies

ii.   DVR/ DVDR/ DVD-R/ DVD+R/DVD/ CD/ File storage polices, electronic and paper copies of report Logs and

extracted videos from booking room and Police CCTV cameras in, on, and around the Fort Valley Police Department Building.

   iii.  Evidence records policies, retention, and logging policies

   iv.  Holding Cell records policies, retention, and logging policies

    v.  Server records policies, retention, and logging policies

   vi.  Policies and procedures for officers responding to 911 Calls for service

  vii.  Field interview policies

 viii.  RAS (Reasonable Articulable Suspicion) procedures and guidelines

   ix.  All Records types/ classifications that Mrs. Diane Brown is responsible for and/or handles as a Records Clerk for the City of Fort Valley.

87. On February 1, 2019, Ms. Richardson informed Mr. Dunn that on January 11, 2019, Chief Spurgeon instructed Fort Valley City Hall employee Dianne Woodson not to respond to Mr. Dunn's previous open records requests because the requested documents could be withheld pursuant to O.C.G.A. § 50-18-72(a)(4).

88. O.C.G.A. § 50-18-72(a)(4) excepts from release "[r]ecords of law enforcement, prosecution, or regulatory agencies in any pending investigation or prosecution of criminal or unlawful activity, other than initial police arrest reports and initial incident reports; provided, however, that an investigation or prosecution shall no longer be deemed to be pending when all direct litigation involving such investigation and prosecution has become final or otherwise terminated."

89. This exception was never invoked in response to any of Mr. Dunn's requests for open records listed above. Prior to February 1, 2019, Mr. Dunn was not aware of this supposed reason for not complying with his requests.

90. All requests listed above were submitted after Mr. Dunn's prosecution was terminated by dismissal of charges on November 13, 2018.

91. On February 6, 2019, Mr. Dunn submitted an open records request to Ms. Richardson via email for the pending and active charges against him. Despite repeated follow-up requests, Ms. Richardson did not

respond until February 18, 2019, stating that there were no pending or active charges against Mr. Dunn.

## Count I
### *Deprivation of First Amendment Rights*
(Against all Defendants in their individual capacities)

92. This Count incorporates the factual allegations set forth above.

93. Mr. Dunn was engaged in clearly constitutionally protected free speech activity when he filmed and photographed government activity in public areas of the Fort Valley City Hall and Police Department.

94. The seizure of Mr. Dunn and his camera, bringing of criminal charges against Mr. Dunn, and interference with his filming violated Mr. Dunn's First Amendment rights.

95. Defendants deprived Mr. Dunn of these rights by singling Mr. Dunn out and retaliating against Mr. Dunn solely because of his reporting and filming in the exercise of his rights to free speech and press.

96. The unconstitutional ban issued to Mr. Dunn interferes with his First Amendment rights to film in public places and to attend governmental meetings.

## Count II
### *Unlawful Seizure/Arrest under Fourth Amendment*
(Against all Defendants in their individual capacities)

97.   This count incorporates and restates the allegations in paragraphs 1 through 96 as if fully set forth herein.

98.   The facts within Defendants' knowledge were not sufficient to establish probable cause that Mr. Dunn committed the crime of disorderly conduct, obstruction, or any other criminal offense.

99.   Based upon the facts known by Defendants, no reasonable police officer could believe that even arguable probable cause existed to arrest Mr. Dunn and there was no arguable probable cause for his arrest.

100.   Defendants displayed malice and reckless disregard for Mr. Dunn's constitutional rights.

101.   The actions of Defendants were the proximate cause of Mr. Dunn's seizure and arrest and damages arising therefrom.

## Count III
### *Violation OF 42 U.S.C. § 2000aa-6*
(against Lt. Postell, Officer Scott-Sinclair, and City of Fort Valley)

102. This count incorporates and restates the allegations in paragraphs 1 through 101 as if fully set forth herein.

103. Lt. Postell seized work product (namely, a camera containing video documentation of a public space) possessed by a member of the press that he was informed was intended for public communication without securing a warrant and without arguable probable cause to believe that the video related to the commission of any criminal offense.

104. Officer Scott-Sinclair seized Mr. Dunn's body camera by physically stopping it from filming without securing a warrant and without arguable probable cause to believe that the video footage related to the commission of any criminal offense.

105. Defendants are liable under 42 U.S.C. § 2000aa-6 for Mr. Dunn's damages of not less than $1,000 plus attorneys' fees and costs.

**Count IV**
*Malicious Prosecution under Fourth Amendment*
(against Lt. Marshall, Captain Lundy, and Chief Spurgeon)

106. This count incorporates and restates the allegations in paragraphs 1 through 105 as if fully set forth herein.

107. Although he lacked arguable probable cause to do so, Lt. Marshall initiated a formal prosecution of Mr. Dunn on the day of his arrest by issuing a citation charging Mr. Dunn with disorderly conduct.

108. Lt. Marshall initiated this prosecution without arguable probable cause.

109. Such prosecution terminated in Mr. Dunn's favor when the charge was dismissed by the Peach County District Attorney on November 13, 2018.

110. When Mr. Dunn submitted a formal complaint about the criminal trespass notifications, however, Chief Spurgeon threatened to take action to cause Mr. Dunn's prosecution to proceed in municipal court, despite the prior dismissal by the Peach County district attorney.

111. Defendants displayed both malice and reckless disregard for Mr. Dunn's constitutional rights.

112. The actions of Defendants were the proximate cause of Mr. Dunn's prosecution and damages arising therefrom.

## Count V
### Unlawful Trespass Bans in Violation of First and Fourteenth Amendments and Georgia Constitution

(against Lt. Marshall, Chief Spurgeon, and City of Fort Valley)

113. This count incorporates and restates the allegations in paragraphs 1 through 112 as if fully set forth herein.

114. By not allowing Mr. Dunn to engage in legal and constitutionally protected expression under penalty of arrest and criminal prosecution, Defendants have deprived Mr. Dunn of his right to free speech as protected by the First and Fourteenth Amendments, as well as the Georgia Constitution's Article I, Section I, Paragraphs V and IX.

115. Mr. Dunn has been subjected to the prior restraint of his speech and has been denied entirely the right to speak to any public official on public property or to attend any public meetings on public property.

116. The documents barring Mr. Dunn from Fort Valley property were issued with the purpose of preventing Mr. Dunn from participating in and reporting on the affairs of the government of Fort Valley.

117. Mr. Dunn would not have been barred from the Fort Valley City Hall and Police Department but-for his prior protected exercise of his free speech right to film government activity on public property.

118. Mr. Dunn has been denied his right to petition government, as guaranteed by the Petition Clause of the First Amendment, as a result of the orders barring him from Fort Valley City Hall and Police Department.

119. The orders barring Mr. Dunn from Fort Valley property violate due process because they were issued without any finding of criminality on the behalf of Mr. Dunn, give unbridled discretion to those who issue them, and lack any notice and appeal process.

120. Mr. Dunn, as a person who has been subject to an unconstitutional order barring him from participating in the meetings of the City Council, or speaking to any public official on public property, or attending any public meeting on public property, seeks declaratory and injunctive relief barring enforcement of the orders barring Mr. Dunn from the Fort Valley Police Department and City Hall as unconstitutional under the First and Fourteenth Amendments and Georgia Constitution Article I, Section I, Paragraphs I, II, V, VII, IX, and XIII.

121. Mr. Dunn also seeks monetary damages for the infringement upon his protected speech and the resulting silencing and chilling of his expression.

### Count VI
*Unconstitutional Disorderly Conduct Ordinance in Violation of First and Fourteenth Amendments and Georgia Constitution*
(against City of Fort Valley)

122. This count incorporates and restates the allegations in paragraphs 1 through 121 as if fully set forth herein.

123. The Fort Valley Disorderly Conduct Ordinance, 62-11, facially and as applied, violates Mr. Dunn's right to freedom of speech under the First and Fourteenth Amendments of the U.S. Constitution and Ga. Const. Art. I, Sec. I, Par. V.

124. Unlike Georgia's more narrowly crafted disorderly conduct statute, O.C.G.A. § 16-11-39, Fort Valley's ordinance is significantly broader. By including an additional uncabined ground for the offense of "disturb[ing] the peace and quiet of any person in any other manner," Fort Valley expands the reach to capture virtually any free speech

activity, including any protest, demonstration, offensive signs, and even the street corner speaker.

125. Mr. Dunn, as a person who has been charged with violating this unconstitutional law, seeks declaratory and injunctive relief barring enforcement of Fort Valley City Ordinance 62-11 as unconstitutional under the First and Fourteenth Amendments and Georgia Constitution Article I, Section I, Paragraphs V.

**Count VII**
***Violation of Georgia Open Records Act, O.C.G.A. § 50-18-70 et seq.***
(against City of Fort Valley)

126. This Count incorporates the factual allegations set forth above.

127. Under Georgia law, agencies shall produce for inspection all records responsive to a request within a reasonable amount of time not to exceed three business days of receipt of a request. Ga. Code Ann. § 50-18-71.

128. Mr. Dunn requested open records on multiple occasions. Defendants did not respond beyond mere acknowledgement of receipt or took weeks to respond. To date, many documents have not been produced, nor an explanation given as to the delay.

129. Mr. Dunn seeks declaratory and injunctive relief requiring Defendants to provide Mr. Dunn with access to the requested records and barring Defendants from continued violations of the Georgia Open Records Act.

## REQUEST FOR RELIEF

WHEREFORE, on the basis of the foregoing, Mr. Dunn respectfully prays that this Court:

a)    Assume jurisdiction over this action;

b)    Hold a trial by jury on all issues so triable;

c)    Award declaratory and injunctive relief as set out herein and in Plaintiff's Motion for Preliminary and/or Permanent Injunctive Relief;

d)    Award nominal, compensatory, and other damages to Plaintiff in an amount determined by the enlightened conscience of fair and impartial jurors;

e)    Award punitive damages against Chief Spurgeon, Lt. Marshall, and Lt. Postell;

f)    Award actual damages of not less than $1,000 for the Defendants' violation of 42 U.S.C. § 2000aa;

29

g)   Award civil penalties under the Georgia Open Records Act, see

O.C.G.A. § 50-18-74;

h)   Award reasonable attorney's fees, expenses, and costs of litigation

pursuant to 42 U.S.C. § 1988, 42 U.S.C.§ 2000aa-6(f), and other

applicable law; and

i)   Award such other and further relief as this Court deems just and

proper.

Respectfully submitted this 16th day of July, 2019.


/s/ Gerald Weber                          s/Jennifer Hickey
Gerald Weber                              Jennifer Hickey
Georgia Bar No. 744878                    Georgia Bar No. 440019

LAW OFFICES OF GERRY WEBER,               LAW OFFICE OF JENNIFER
LLC                                       HICKEY, LLC
Post Office Box 5391                      375 Rockbridge Rd NW Ste 172-338
Atlanta, GA 31107                         Lilburn, GA 30047
404-522-0507                              770-674-8252
wgerryweber@gmail.com                     jennifer@jenniferhickeylaw.com